NEWMAN, Circuit Judge,
concurring in
the judgment.
Although Mr. Figueroa’s petition is not without merit, I conclude that he has not met the extremely heavy burden of establishing that congressional actions violate the Constitution. It may be that additional data in support of his various arguments could shift the balance, but on the record before us, I agree that the judgment of the Court of Federal Claims must be affirmed. *1036 However, I do not share the reasoning of the panel majority. I would affirm on the ground applied by the Court of Federal Claims, ruling that Congress is not acting irrationally.
The Court of Federal Claims compared the amount of funds that were diverted from the PTO, with the government’s very rough estimate of the additional patent-related costs that are paid out of general government funds, including the PTO employee retirement expenses that are paid by OPM, the costs to the Department of Commerce as the parent agency of the PTO, the costs of judicial dealings with patent matters, of patent exclusion activities of the Customs Service and the International Trade Commission, and miscellaneous other items. The Court of Federal Claims concluded that Mr. Figueroa had not shown that the diverted funds exceeded these total costs. I agree that the evidence did not clearly establish that Congress was extracting more money from patentees than the government spends in administering the system. Thus his potentially viable constitutional arguments of illegal exaction and improper taxation were not demonstrated so clearly and convincingly as to establish a constitutional violation.
Mr. Figueroa also makes a strong argument that the unduly high fees are a burden on the constitutional purpose to promote the useful arts. Although without doubt the patent system should not be unnecessarily burdened, the absence of quantification and hard evidence of the effect of the fee structure weakens the constitutional force of this argument. Although I agree that the dismissal must be affirmed, I cannot join in the panel majority’s reasoning. The panel majority concedes that there must be a rational basis between the congressional diversion of the PTO fees and the constitutional purpose of promoting the useful arts; the majority opinion speculates about what such a rational basis might be, and recites with approval the theory that the imposition of higher than necessary fees will “deter the filing and prosecution of certain types of patent applications without commercial potential.” Indeed, one occasionally hears the gibe that people will obtain a patent simply for the glory of hanging a beribboned document on the wall. Although generally tongue-in-cheek, and never heard from inventors and investors, the panel majority includes it as serious justification for the higher fees that enable the ensuing fee diversion. However, Congress’ actual goals are stated in the budgetary diversion, and do not include those postulated by the panel majority. The beneficiaries of the diverted PTO collections are identified in the congressional action, such as the $77 million diverted to homeland security in 2004. It is not pretended that any of the recipients of the diverted funds has a rational relationship to the constitutional charge to promote the progress of the useful arts.
Mr. Figueroa argues cogently that high fees place a burden on patent-supported investment and disclosure and development. Economists stress the importance of patent-type structures in commercial risk analysis and entrepreneurship. When the patent fee structure was realigned in 1982 to include fees to be assessed after the patent has issued, that is, the “maintenance” fees levied at Sfe, 1% and lijé years after grant, the purpose was to place the increased burden of patent administrative costs on those patents that achieve commercial value. Mr. Figueroa is correct that the fee structure was never intended to provide government income to fund unrelated activities. See 35 U.S.C. § 41 (authorizing the Director of the PTO to set fees “to recover the estimated average cost to the Office of such processing, services, *1037 or materials”). However, as the income increased from maintenance fees, the PTO came to be viewed as a kind of “profit center” for the support of unrelated government projects. Meanwhile, the backlog of the PTO is rapidly increasing,[1] and expanded services remain unfunded.
Mr. Figueroa’s argument based on the constitutional mandate is elaborated in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966):
At the outset it must be remembered that the federal patent power stems from a specific constitutional provision which authorizes the Congress “To promote the Progress of * * * useful Arts, by securing for limited Times to * * * Inventors the exclusive Right to their * * * Discoveries.” Art. I, § 8, cl. 8. The clause is both a grant of power and a limitation.... The Congress in the exercise of the patent power may not overreach the restraints imposed by the stated constitutional purpose.
383 U.S. at 5-6, 86 S.Ct. 684 (footnote and citations omitted). The Court has also explained that congressional enactments implementing the Patent and Copyright Clause must be “rationally related” to the constitutional objective. See, e.g., Eldred v. Ashcroft, 537 U.S. 186, 212-13, 123 S.Ct. 769, 154 L.Ed.2d 683 (2003) (considering whether lengthening the copyright term has a rational basis to “promoting the progress of science”). The panel majority has inaptly applied the “rational basis” criterion, for although it is surely rational for Congress to raise money to support the government, the diverted PTO fees are not used to support activities having any relation to the progress of science and the useful arts. Thus United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) does not support the diversion, for in that case the Court observed that Congress had not articulated its legislative purpose, whereas here the destination of the diverted PTO collections is plainly stated.
The government argues that its right to divert the PTO fee income is absolute, and is supported by the broad powers of Congress to tax and to spend. Mr. Figueroa responds that this diversion is no more than a direct tax on inventors, and violates the constitutional prohibition of direct taxes that are not apportioned. The Court of Federal Claims lumped all of the PTO collections together, and held that they are not a tax. A more rigorous analysis shows that the amount of the fees that are allocated to support PTO services are not an unapportioned tax; however, the amount that is diverted to support other government activity can readily be viewed as an unapportioned direct tax, and prohibited by Article I, section 9, clause 4 (“No Capitation, or other direct, tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken.”) (modified by the Sixteenth Amendment, authorizing the levy of income tax). As was explained in Simmons v. United States, 308 F.2d 160 (4th Cir.1962):
A direct tax is a tax on real or personal property, imposed solely by reason of its being owned by the taxpayer. A tax on the income from such property, such as a tax on rents or the interest on bonds, is also considered a direct tax, being basically a tax upon the ownership of property. Yet, from the early days of the Republic, a tax upon the exercise of only some of the rights adhering to own *1038 ership, such as upon the use of property or upon its transfer, has been considered an indirect tax, not subject to the requirement of apportionment.
Id. at 166 (citations omitted). The federal government cannot assess an unapportioned tax on the ownership of property.
The panel majority finds that the PTO fees are not direct taxes but are excise taxes. I doubt that this is correct as a matter of law. In my view, however, the entire cost of government patent operations is relevant to whether the diversion is unconstitutional as an unapportioned direct tax.
Mr. Figueroa, an inventor, has expressed valid concern for the nation’s prosperity and vigor as derived from advances in science and technology. He exhorts optimum support of the PTO’s assignment, to implement the constitutional purpose. His constitutional arguments are not devoid of merit, and warrant deeper exploration than they have thus far received.

. The Commissioner of Patents recently explained that the application backlog is now approximately one-million and rising, and the first action on the merits pendency in some art units exceeds ten years. http://www.uspto. gov/web/offices/pac/dapp/opla/ presentation/chicagoslides — back. ppt.